Martin J. WIMAN, Warden, Kilby Prison et al., Appellants,

v.

William K. POWELL, Appellee.

No. 18987.

United States Court of Appeals Fifth Circuit.

July 13, 1961.

Rehearings Denied Sept. 6, 1961.

MacDonald Gallion, Atty. Gen., James W. Webb and George D. Mentz, Asst. Attys. Gen., for appellants.

Euel A. Screws, Jr., Montgomery, Ala., R. Clifford Fulford, Birmingham, Ala., for appellee.

Before HUTCHESON, RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

Upon former appeal we had said: "From the present record, without more, it would appear that Powell's discharge will best serve the ends of justice." Powell v. Wiman, 5 Cir., 1961, 287 F.2d 275, 282. The cause was remanded to accord the State an opportunity for further hearing to prove that it had not in fact suppressed vital evidence upon Powell's trial. At the conclusion of that hearing, the district court found:

"Upon this submission, this Court specifically finds that the respondents have failed in their effort to make a showing of additional evidence from which this Court could find and conclude that there had been no suppression or withholding of evidence by the State officials that related to the witness Hatt's mental condition. As to this point, the evidence is without dispute that prior to Powell's trial in the State court in January of 1956, the solicitors in charge of the prosecution were in possession of a report made by a psychiatrist, Dr. Frank Kay of Birmingham, Alabama. This report was not made available to Powell's attorneys by the State solicitors and was not made available by the psychiatrist even upon request by Powell's attorneys. The only information furnished Powell's attorneys by the State solicitors concerning this re-port was that the report 'would not show Hatt was insane.' The report, as a matter of fact, contained this statement:

"'I believe we are dealing with a person who is not entirely normal. From time to time he has some sort of fugue state or confused episodes. He doesn't seem too confused now, but he is basically abnormal enough, in my opinion, to be sent to a State Hospital for a period of study and observation. There is sufficient evidence of basic mental trouble for me not to wish to jump into a quick diagnosis or make immediate statements about his responsibility now or at the time of the commission of the crime.'

"From the evidence submitted by the parties upon this hearing concerning the withholding or the suppression of a statement that had been made by Hatt (and transcribed) to the State prosecutors, this Court finds that such statement was prior to and during the trial of Powell in the possession of the prosecuting officers for the State of Alabama and that such statement was not made available to the attorneys representing Powell, even after Hatt testified as a witness for the State of Alabama to certain facts that conflicted with certain parts of his statement. The prosecuting officer for the State of Alabama—it was found by the Court of Appeals for the Fifth Circuit—'actually bolstered Hatt's testimony by reference to this statement while keeping the contents of the statement to itself.' The attorneys for Powell did not know the contents of this statement."

The district court accordingly ordered Powell discharged from custody of the warden and "of any other officers, employees, or agents of the State of Alabama, which custody is pursuant to the conviction and judgment of the Circuit Court of Jefferson County, Alabama, which occurred and which was pronounced in January, 1956." The district

court declined to order that Powell not be rearrested and not be reprosecuted.

Subsequently, Powell's court-appointed counsel filed a motion showing that as soon as Powell was discharged from the warden's custody he "was re-arrested by officials of the State of Alabama under the same indictment upon which his conviction and judgment of the Circuit Court of Jefferson County, Alabama, of January, 1956, was based." [1] Powell's attorneys moved the district court to issue an order to certain enumerated officials of the State of Alabama directing them to show cause why they should not be adjudged in contempt of court, or, in the alternative, "for an Order amending its Order of April 28, 1961 to make specific that Petitioner should not be rearrested and retried by any official of the State of Alabama for the same alleged offense upon which his January, 1956 sentence and conviction was based and upon which he has served in Kilby Prison, Montgomery, Alabama, a substantial portion of an unconstitutional ten year sentence."

The district court declined either to issue a show cause order or to amend its order discharging Powell from custody pursuant to the judgment of conviction. Respondents appeal from the judgment discharging Powell from custody under his sentence of imprisonment, and Powell cross-appeals from that part of said judgment declining to order that he not be re-arrested and not be reprosecuted, and from the subsequent denial of his motion to show cause or to amend the order providing for his discharge.

To the credit of present counsel for the appellants, it should be said that they voluntarily disclosed the report rendered by Dr. Frank Kay, quoted in the district court's findings. That report was not before this Court on the former appeal. Counsel are to be commended for such candor.

The State prosecutor testified that he was aware that Powell could not have been convicted without Hatt's testimony, and that Hatt's mental competency was vital to the credibility of his testimony. In the face of such knowledge, the State prosecutor had declined the request of Powell's attorneys to see Dr. Kay's report with the statement that it would not show that Hatt was insane. While Dr. Kay's report did not declare Hatt insane, it went a long way in that direction. It appears to us that the State prosecutor's statement, when coupled with his refusal of permission to see the report and his active and successful opposition to the introduction of any evidence of Hatt's mental condition, was so misleading as to amount to another instance of suppression of evidence.

The appellants complain that the district court failed to take into consideration that part of this Court's opinion on former appeal which said:

> "Whether or not any one of the instances which we have recited in which the State failed to disclose or suppressed evidence going to Hatt's credibility would suffice by itself, the totality of all of them, under the circumstances of this case, leaves no doubt that Powell's trial was attended by such fundamental unfairness as to amount to a denial of due process of law."

Powell v. Wiman, supra, 287 F.2d at page 281.

The district court did, however, specifically find that Hatt's written statement [2] in the possession of the State prosecuting officers, but not available to Powell's attorneys, conflicted with Hatt's testimony as a witness for the State, and called attention to our finding on former appeal that the prosecuting officer for the State "actually bolstered Hatt's testi-

---

1. Counsel inform this Court that Powell has now been released under a $500 appearance bond.

2. That the stenographically transcribed record of Hatt's answers to questions was not read or signed by Hatt does not, as argued by appellant, prevent it from being a statement which the State had no right to suppress under the circumstances of this case. The Jencks' statute, 18 U.S.C.A. § 3500, has no application.

mony by reference to this statement, while keeping the contents of the statement to itself." See 287 F.2d at page 281. That finding was not refuted on the further hearing before the district court. Powell's conviction thus obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, Napue v. People of State of Illinois, 1959, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

■ In declining to order that Powell not be rearrested and not be reprosecuted, the district court properly construed the mandate of this Court. The writ of habeas corpus questioned the legality of Powell's custody pursuant to his judgment of conviction, and the district court could not upon this proceeding go further and direct that Powell not be rearrested and retried.[3]

Upon both appeal and cross-appeal the judgment of the district court is

Affirmed.

HUTCHESON, Circuit Judge (concurring specially).

I concur in the result in this case as to both appeals. I do so, however, with considerable misgivings. This is because the case in its particulars seems to present the theory of fair play in a criminal investigation and prosecution as though it were a one way street, instead of presenting it as it is, a two way street. I am the more troubled because it seems to me that both state and federal courts are making it increasingly more difficult to obtain a conviction in the present climate of opinion which so over-emphasizes and slants in the defendant's favor the social and ethical requirements of criminal investigation and prosecution as to

almost completely overlook the at least equal good of bringing a criminal to justice.

After all, as Madison tells us: "In framing a government which is to be administered by men over men, the first difficulty lies in this, we must enable the government to control the governed"; and if, by over accentuation of so called fair play toward the defendant, we make it more and more difficult, if not impossible, to convict the guilty, we fail in the first end of government. It is true that, as Madison tells us: "We must, in the second place, oblige the government to control itself"; and we should permit nothing which deprives the citizen of his substantial constitutional rights to fair play. However, the question at issue in this case, in respect to what defendant's real rights are, is a very difficult and delicate one which requires the most careful consideration.

A recent article by Professor Fred E. Inbau, in the Northwestern University "Tri-Quarterly", Vol. 3, No. 2, 1961, discusses and deals very well with the general problem presented here. I cite, and quote from, it with full approval. It begins:

"To what extent can criminal investigators and prosecuting attorneys function effectively, if at all, within the 'fair play' concept that is so characteristic of the American way of life? How much individual civil liberties can we grant to all persons and still maintain the degree of public safety and security necessary for our collective existence and enjoyment?"

This particular case just decided by us, as well in what is not decided as in what is decided, brings this particular question strongly to the fore. Certainly

---

3. See opinion on rehearing before the Court en banc in MacKenna v. Ellis, 5 Cir., 289 F.2d 928. In addition to the authorities cited in footnote 2 to that opinion, see Irvin v. Dowd, 81 S.Ct. 1639; Stroud v. United States, 1919, 251 U.S. 15, 18, 40 S.Ct. 50, 64 L.Ed. 103; United States ex rel. Jones v. Nash, 8 Cir., 1959, 264 F.2d 610; Robinson v. United States,

6 Cir., 1944, 144 F.2d 392, 397; McCleary v. Hudspeth, 10 Cir., 1941, 124 F.2d 445, 447; King v. United States, 1938, 69 App.D.C. 10, 98 F.2d 291, 295; United States v. Lowrey, D.C.W.D.Pa.1948, 77 F.Supp. 301, 303; Note 61 Harvard Law Review 657, 662 n. 45 (1948); Annotation 97 A.L.R. 160.

no one could quarrel with the view that in a real case of deliberate suppression and concealment by the prosecution of evidence establishing the defendant's innocence, must be condemned and prevented. When, however, as here, the matter under discussion does not in any way establish defendant's innocence but merely goes to an attack upon the credibility of one of the witnesses against him, it does seem to me that an otherwise good principle is being run entirely into the ground. Perhaps the basic trouble in cases like the one here is that (instead of, as is required in International Law, where a case is sought to be made of an injustice done to the claimant, the primary emphasis is on proving that an injustice was in fact done him; that, in short, he was not guilty of the crime charged against him) the courts and the prosecution are so concerned with questions of fair play from a purely technical standpoint as to lose sight entirely of the primary question whether the defendant, in whose interest these questions of fair play are raised, is in fact innocent. It may well be that when a defendant seeks to invoke in his favor these ideas of fair play, he must first lay the predicate of showing his innocence of the crime charged. As it is, his hands may be red with blood and his guilt may shriek to high heaven but if he can invoke some of these overattenuated and highly technical ideas of theoretical fair play, he may escape altogether the consequences of his crime.

I concur in the result in this case for two reasons, (1) the law seems to be pretty definitely written that way, and I cannot find authority to take a different view; and (2) the matter complained of does come very close to suppression of material facts, even though on its face it seems to be merely speculation as to whether the facts are or are not material.

On Petitions for Rehearing

PER CURIAM.
Both the petition for rehearing on behalf of the appellants and that on behalf of the appellee-cross appellant are denied.

In response to their petition for instructions, court-appointed counsel are informed that they have no continuing duty under the appointments by this Court.