**UNITED STATES of America,**
**Appellee,**

v.

**Charles Edward LAWRENSON,**
**Appellant.**

**Nos. 8144, 8354, 8465.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 20, 1961.

Decided Jan. 9, 1962.

Jervis Spencer, Finney, Baltimore, Md. (Court-appointed counsel), for appellant.

Charles Edward Lawrenson, pro se.

John R. Hargrove, Asst. U. S. Atty., Baltimore, Md. (Joseph D. Tydings, U. S. Atty., Baltimore, Md., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This case presents three separate appeals from final action of the District Court in a criminal proceeding which resulted in defendant's conviction on a charge of bank robbery. The first of these, No. 8144, is a direct appeal from the judgment order of conviction. The second, No. 8354, is an appeal from the Court's order denying defendant's motion for new trial on the grounds of newly discovered evidence. The last, No. 8465, is an appeal from the Court's order denying defendant's motion to vacate or correct illegal sentence, filed under Fed. R.Crim.P. 45, 18 U.S.C.A. We have adopted to a great extent the comprehensive statement of facts included in the opinion of the learned judge below.

The four count indictment in this case charged defendants Couch and Lawrenson with armed robbery of the County Trust Company of Maryland, Mechanicsville Branch, in St. Mary's County, Maryland. Couch plead guilty and testified at the trial of Lawrenson, who was found guilty by a jury on all four counts and sentenced to imprisonment for twenty years. Before sentence Lawrenson filed a

motion for a new trial and renewed his motion for a judgment of acquittal. These motions were denied for reasons stated orally during and after the argument thereon.

The bank was robbed of some $28,037 on September 4, 1959. Couch was arrested the following day, and Lawrenson was arrested on September 6, 1959, in a hotel room at Miami Beach, Florida, which he was sharing with a woman generally referred to as Kay Merrick, having registered as Mr. and Mrs. Merrick. At the time he was arrested the agents seized $22,503 in suitcases and a shoe box, $213 in Lawrenson's wallet, an automatic pistol, some ammunition, a receipt from a Washington store showing payment for ammunition, credit cards, tickets, and driver's licenses in the name of Paul J. McCray, Virginia and South Carolina and U. S. Forces in Germany license plates, and various other items.

On the motion of Lawrenson, Judge Watkins suppressed this evidence. Prior to the trial, before Judge Thomsen, defendant made a motion for the return to him of the $22,503 taken from him. He also moved for a continuance in the criminal trial until the determination of the civil suit pending between defendant, on the one hand, and the United States Marshal and the bank's bonding company on the other, for the recovery of these funds. Both of these motions were denied.

At the trial Couch testified that on September 3, 1959, the day before the robbery, he drove a green Cadillac, procured by Lawrenson, and Lawrenson drove Couch's black Chevrolet to Hughesville, Maryland (a few miles from Mechanicsville), where they arranged to leave the Chevrolet in a hotel parking lot overnight and went in the Cadillac to the Mechanicsville Bank, which Couch entered, leaving Lawrenson outside. They did not rob the bank that day, but returned to Washington in the Cadillac. The next day, dressed in engineers' overalls and caps, wearing sunglasses, and armed with guns supplied by Lawrenson, they drove in the Cadillac to the bank. Couch entered first and assembled the three women employees into a group behind the counter; Lawrenson then entered, the women were forced to lie on the floor, Couch taped their mouths, and Lawrenson gathered the money into a shopping bag. Lawrenson and Couch then drove to Hughesville, changing into ordinary street clothes on the way. They stopped on the hotel parking lot, transferred the bags containing the money, overalls, etc., from the Cadillac to the Chevrolet and left for Washington with Lawrenson driving. Lawrenson dropped Couch off at the Greyhound Bus Station in Washington, promising to meet him at a certain corner in Washington at 10:00 that evening, to give Couch his share of the money, but Lawrenson did not appear.

Couch's testimony was corroborated and supplemented in a number of ways. Lawrenson was identified as the man who rented the green Cadillac from Hertz in Boston on August 28, using an American Express credit card of Paul J. McCray. After much testimony had been introduced to prove these facts, they were admitted by Lawrenson's counsel, who also conceded that Lawrenson still had McCray's card at the time of the robbery. On September 3, a Maryland State trooper had noticed a green Cadillac and a black Chevrolet, each with only one license tag. He stopped the Chevrolet, the driver presented a driver's license in the name of McCray, but the trooper, who issued a summons, identified the defendant at the trial as Lawrenson. The witness Muller identified Lawrenson as the man he saw sitting in a Cadillac in front of the bank at the crucial time on September 4. One of the bank employees, Miss Davis, identified Lawrenson as the second robber. She also positively stated that about a week after the robbery, she had identified photographs of defendant as those of one of the men who entered the bank and robbed it. There was other evidence corroborating this. The witness Turner, whose job kept her near a window opposite the hotel parking lot in Hughesville, identified Lawrenson as the man who transferred two or three bags from the Cadillac to the Chevrolet on Sep-

tember 4, while Couch did something to the front license plate.

Lawrenson did not take the stand, nor did Mrs. Merrick, although she and Mrs. Lawrenson sat together in court throughout the trial. The defense was an alibi. McCray, who turned out to be a member of the Lawrenson-Merrick coterie, had been called by the government and had testified nervously that he had not used his credit card to obtain the Cadillac in Massachusetts. After spending the luncheon recess with Mrs. Merrick and Mrs. Lawrenson, he was called by the defense and testified even more nervously that at about the time of the robbery he had called at Mrs. Merrick's apartment and the door had been opened by Lawrenson in purple pajamas. The jury evidently did not believe this testimony.

Defendant's counsel also tried to suggest on cross-examination of government witnesses and in the closing argument, that Robert Cutler, who has been variously described as a son, foster son, or a nephew of Mrs. Merrick, was the other robber, although there was no evidence to that effect. There was evidence that Cutler was on parole from an Ohio prison, living in Mrs. Merrick's apartment in September 1959, that he had driven to Baltimore with Couch in Couch's car a few days before the robbery, and that he knew the Lawrensons, Kay Merrick, and McCray.

In the course of the trial, defendant's counsel put James E. Couch, father of Robert Couch, on the stand and attempted to elicit testimony that the witness had been told that his son had stolen a car for which he was arrested by the deputy sheriff. The Court, on objection by the government, struck out this testimony. Defendant also attempted to get the witness to testify that he had been questioned about the bank robbery. This also was stricken by the Court.

In his instructions to the jury, the Court below told the jury that Miss Davis had identified, shortly after the robbery, pictures of defendant as those of one of the robbers. He also said that

there was no dispute but that Couch's Chevrolet and the green Cadillac rented by defendant were the same two cars that figured in the testimony right along. Both these statements are correct as the record shows. He also pointed out that Couch had testified that defendant had suggested to him that he plead guilty. In fact, Couch testified that defendant had urged him to plead *not* guilty, and offered to share some of the loot with him if he would do so.

The Court also stated that there was no evidence in the record connecting Robert Cutler with the robbery. A survey of the record shows this statement to be manifestly correct. In the course of the instructions the Court said that there was reference in the second count of the indictment to putting lives in jeopardy. In fact this reference is in count four of the indictment.

The Court also commented on defendant's failure to call Mrs. Merrick as a witness to corroborate McCray's testimony showing an alibi for defendant. The Court also stated that there was no evidence of any request to defendant to stand in a line-up or refusal by him to appear in a line-up. He said there was no evidence one way or the other on this point and that the jury could not speculate upon facts not in the record. These statements are correct, as the record shows. The prosecutor had commented on defendant's failure to request a line-up. The defendant asked the Court to instruct that defendant " * * * [H]ad never refused to stand in a line-up". Instead the Court gave the above instruction.

The Court refused to instruct that the government's circumstantial evidence must exclude every reasonable hypothesis except guilt in order to support a verdict against defendant.

### I. The Direct Appeal.

The defendant has contended on this appeal that there were fourteen separate instances of error in the conduct of the trial below. These may be divided into two main groups.

(A) Alleged Errors In The Instructions To The Jury.

In this area there are nine separate errors claimed by the defendant. He claims that the Court erred in: (1) instructing that Miss Davis had identified photos of the defendant soon after the robbery, (2) instructing that there was no dispute that the green Cadillac and black Chevrolet mentioned in the evidence are the same two cars that figure in the testimony right along, (3) instructing that there was other affirmative evidence of Trooper Walker that defendant was driving one of the cars shortly before the robbery which went to identification of defendant as a participant in the robbery, (4) instructing that defendant had suggested to Couch that he plead guilty, (5) instructing that there was no evidence connecting Cutler with the robbery, (6) instructing that there is reference in the second count of the indictment to putting lives in jeopardy, (7) instructing the jury that the defendant did not request a lineup for identification purposes, (8) refusing to instruct that where the government relies upon circumstantial evidence, such evidence must exclude *every* reasonable hypothesis except guilt, and (9) commenting to the jury that defendant did not call Kay Merrick as a witness.

█ The defendant failed to object to alleged errors (1) through (7). It is well established that under the Fed.R. Crim.P. 30 a defendant must object to errors in the trial in order to obtain review of those errors on appeal unless they are so substantial as to fall within the scope of Rule 52(b). United States v. Vasen,. 222 F.2d 3 (7 Cir. 1955). There the defendant assigned as error certain instructions and comments to the jury, made by the court, to which he did not object. The Court said:

"Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., prescribes the time and place for making objections to instructions. In the absence of compliance with this rule, defendants are precluded from reviewing the action of the court. * * * In other words the court must be given opportunity to rectify any inadvertent wrongful charge, statement or ruling. * * * This includes rulings in the course of the trial, comments of the court and instructions to the jury. In all such instances common fairness requires that before it can be successfully contended on appeal that the trial court has erred, that court must have been given an opportunity to rectify any inadvertent comment, ruling or instruction." (222 F.2d at 5).

█ Therefore, the defendant cannot here obtain review of specifications of error (1) through (7) unless such errors are substantial and capable of resulting in miscarriage of justice. United States v. Vasen, supra; United States v. Raub, 177 F.2d 312 (7 Cir. 1949). After an exhaustive study of the record in this case, we conclude that specifications of error (1) through (7) are not so substantial as to come within the "plain error" provision of Rule 52. Indeed we are convinced that in most of these specifications no mistake was in fact made. Only in Nos. (4) and (6) was there any mistake in fact made and these mistakes were purely technical. They could not operate to prejudice the defendant in any way. Further, even assuming *arguendo* that they could prejudice defendant, these errors could not affect any of his substantial rights.

█ This leaves only specifications of error (8) and (9), to which proper objection was made, for consideration. Specification (8) is easily disposed of on the basis of two cases. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), exactly the same charge was requested by the defendant, and refused by the trial court. The Supreme Court held that this was not reversible error, saying:

"* * * [T]he better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence

is confusing and incorrect (citing cases)." (At 139–140, 75 S.Ct. at 137).

There is direct authority on this point in this Circuit. Milanovich v. United States, 4 Cir., 275 F.2d 716 (1960) rev'd on other grounds, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961).

The Court below gave an ample and proper instruction in this case on the standards of reasonable doubt. There is no objection in the record to this part of the charge and it was not claimed in argument that there was any error on this point in the charge. Therefore, we hold that the requested instruction was properly denied.

■■ As to specification of error (9), relating to the comment of the trial court on defendant's failure to call Mrs. Merrick as a witness to corroborate McCray's testimony, we do not think that comment was erroneous. The defense raised by the defendant was alibi. McCray testified on defendant's behalf that near the time of the robbery the defendant, wearing purple pajamas, had answered the door of Mrs. Merrick's apartment in Washington, D. C. McCray was an extremely poor witness; indeed, the District Judge said in his opinion, "I felt at the time [that McCray testified] and still feel that it was as clear a case of perjury as I have ever heard". The weakness of this testimony must have been apparent to defendant and his experienced counsel. Mrs. Merrick, whom McCray testified was in the apartment at the time in question, was an apparently close friend of both the Lawrensons. She was present in the court, sitting with Mrs. Lawrenson, at the time of McCray's testimony. If defendant's alibi were true, she could have corroborated McCray's testimony, and she was readily available to the defendant. In spite of this he failed to put her on the stand. Purely as a matter of logic these circumstances would justify an inference that Mrs. Merrick could not testify that defendant was in her apartment at the time of the robbery, and therefore that McCray was not telling the truth. All that the District Judge said in his comment was that the jury in evaluating the testimony of McCray could consider the fact that the defendant did not call Mrs. Merrick to corroborate his testimony as to defendant's whereabouts on the afternoon of the robbery. The inference pointed out is clearly justified as a matter of logic. Therefore, the Judge's comment is erroneous only if it infringed on some privilege of the defendant not to have Mrs. Merrick's testimony come into evidence. Defendant raises no claim of such privilege. We cannot find any conceivable ground on which defendant could have objected even if the government had called Mrs. Merrrick as its own witness. It is clear that defendant has no privilege to keep out any direct, relevant testimony she might give. Therefore, the comment of the Court below did not in any way prejudice the defendant.

(B) Alleged Errors In Ruling On Several Motions Made By Defendant And In Striking Certain Testimony.

Defendant's remaining specifications of error are that the Court erred in: (10) denying his motion for a judgment of acquittal on the grounds that there is insufficient evidence to support the verdict, (11) denying his motion for a new trial on the grounds that the jury failed to use due deliberation in reaching its verdict, (12) denying his motion for a continuance pending the determination of the civil suit involving his right to the money seized from him in Florida, (13) in striking out two parts of the testimony of James E. Couch, father of Robert Couch, the other defendant, and finally (14) denying his motion for the return of the money seized from him in Florida. We have considered each of these points with great care and find that there is no error in the above actions of the District Court.

■■ The defendant's brief contains no discussion of the above fourteen specifications of error. In the brief there is a mere listing of ten of them wihout more. The remaining four were argued by defendant *pro se* though not briefed.

Though under these circumstances we would not normally be required to consider points presented to this Court in this fashion, U.S.Ct.App., 4th Cir. Rules, Rule 10, 28 U.S.C.A.; Montgomery v. Marva Theaters, 4 Cir., 218 F.2d 221 (1954), we have in this case examined the record and the law on each of these points. We can state without reservation that there is no authority which supports defendant's contentions on these points. Further, in the few instances where mistakes did occur, they were not substantial and in no way prejudiced the defendant. Therefore, the conviction below is affirmed on the direct appeal.

## II.

■ In September of 1960, after the appeal had been filed, a friend of defendant's gave defendant's counsel information as to Cutler's whereabouts. It seems that Cutler was arrested in Texas early in May 1960, a short time before the trial began, and was returned to Ohio as a parole violator. His probation officer notified an F.B.I. Agent in Washington, D. C., that he had been arrested, but counsel for neither the government nor for defendant had requested further information from him, so the agent did not pass the word along to Baltimore. Around September of 1960 counsel for defendant visited Cutler in the Ohio prison and obtained an affidavit from him. This affidavit was filed with the present Motion for New Trial on grounds of newly discovered evidence.

Cutler was not represented by counsel when he gave the affidavit. The District Judge held a hearing on the motion and arranged for Cutler to be present. Before Cutler was put on the stand, he was given court appointed counsel. Once on the stand he claimed his Fifth Amendment privilege on all questions relative to the giving of the affidavit and to the information it contained. Defendant then offered the affidavit in evidence. The government objected. The District Judge, in order to avoid further delay, treated the affidavit as admissible although there is grave doubt as to whether or not it is properly admissible under the hearsay rule.

In the affidavit Cutler stated that he was living with Mrs. Merrick, his mother, from August 17, 1959, to October, 1959, while on parole. He broke parole in late October of 1959 and left the Washington area, telling no one of his whereabouts. On September 2, 1959, he purchased the clothes worn by the robbers and placed them in Couch's car along with a .32 calibre pistol and a gas pistol which he had previously placed there. In the evening of September 4, 1959, he met Couch at a motel and the latter paid him $350 on a loan Cutler had made to Couch. Couch at that time showed him a suitcase full of bills and said it was from the "bank job".

Cutler also stated therein that when he was questioned by agents of the F.B.I. in September of 1959, they told him that his fingerprints had been found on Couch's black Chevrolet and on a .32 calibre pistol, a gas pistol, and a set of South Carolina license plates, and another set of plates which they believed to have been used in the robbery. They said they had taken these items from one of the suspects.

This Court has said that in order to justify a new trial evidence discovered subsequent to trial must be of such a nature that if a new trial is held it would probably result in an acquittal of the defendant. Mills v. United States, 281 F.2d 736 (4 Cir. 1960). The defendant claims that the significance of this affidavit is that it shows that if Cutler had testified at the trial his testimony would have refuted Couch's testimony, and probably would have been accepted by the jury in place of Couch's testimony. Further, it would have impeached Couch's testimony so that even if the jury had not accepted Cutler's testimony on the merits, it would have prevented the jury from accepting Couch's testimony on the merits.

The most obvious defect in these contentions is that they are, even if true, purely speculative and without any foundation in what the affidavit shows Cutler's testimony would have been. There

are, however, more fundamental difficulties with these contentions. First, Couch's testimony tended to prove only the fact of defendant's *participation* in the robbery. Therefore, to produce a likelihood of acquittal upon a new trial, Cutler's testimony would have had to substantially prove that defendant was not a *participant* in the robbery. We do not believe that this could possibly be the effect of Cutler's testimony. All that Cutler's statements in the affidavit tend to prove is that *he* (Cutler) participated in the preparations for the robbery. It shows, if true, that he put the clothes, the pistol and gas pistol in defendant's car, and that he (Cutler) got Couch to purchase ammunition for the pistol, the receipt for which was later found on defendant's person. This mere implication of Cutler in the preparations for the robbery is not sufficient to disprove *defendant's* participation in it. It merely shows that there were three persons involved instead of only two. Defendant claims that since only two persons entered the bank, Cutler's testimony would necessarily have excluded defendant as a participant. This is not so, for it does not appear from the affidavit that Cutler would have, or could have, testified that he took part in the *actual robbery*. It shows only that he played a role in preparing for the robbery. The jury could find that two men entered the bank, that one of them was defendant, and still believe everything to which there is reason to believe Cutler would testify. Therefore, the testimony of Cutler could not prove in a substantial degree that defendant was not a participant. It could not, it follows, make an acquittal likely in a new trial. Therefore, it was not grounds for a new trial.

As to the second contention, it is clear that all the statements in the affidavit are consistent with Couch's testimony with only one exception of minor importance. This is the statement that Cutler met Couch on the evening of the day of the robbery and Couch showed him money which he claimed was the product of the "bank job". This conflicts with Couch's testimony at the trial that after he left defendant in Washington, after the robbery, he did not again see defendant until after he had been arrested, nor receive any of the stolen money. However, this does not prove that defendant did not have some of the money since Cutler did not state that he (Cutler) had any of it, except $350 paid him by Couch, nor that Couch had *all* of the money. It does not, therefore, tend to exonerate defendant. Further it impeaches Couch, if a jury should accept it as true, only on one narrow point. It might lessen to a slight degree the weight the jury would give to Couch's testimony, but we do not think that this single inconsistency would cause reasonable men to discard all of Couch's testimony. Further it was stated in Mills v. United States, supra, that in order to justify a new trial, evidence discovered after the trial must be more than cumulative or *impeaching*. We have shown that none of Cutler's testimony could have exonerated defendant. Therefore, even if it did impeach Couch that could be its only effect, and this is not sufficient to require a new trial.

Further, as pointed out by the court below, none of the testimony that Cutler would have given could meet the other three requirements laid down in the Mills case which new evidence must meet to justify a new trial. In any event, it could not meet all five of those requirements.

■ Defendant also contends on this motion that the government improperly witheld from him information about Cutler's involvement in the crime and also information as to his whereabouts. The court below found as a fact that counsel for neither side knew where Cutler was at the time of the trial and also that defendant never asked the government for help in finding Cutler. A survey of the record shows abundant support for these findings in the evidence and that they are not clearly erroneous. Therefore, we may not overturn them. This renders inapplicable here the cases of Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993; United States ex rel. Al-

meida v. Baldi, 195 F.2d 815 (3 Cir. 1952), Cert. denied 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1953); and United States ex rel. Thompson v. Dye, 221 F.2d 763 (3 Cir. 1955) Cert. denied 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955), on which defendant relies, since in each of these cases the *prosecutor* himself had knowledge of the information that was withheld.

The cases of Pyle v. State, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942) and Curran v. State, 259 F.2d 707 (3 Cir. 1958) Cert. denied 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959) where the Court reversed convictions due to fact that police officers withheld information, even though the prosecutor did not know this, do not apply here. In the first case the defect was not the mere passive withholding of evidence by the police officers but the coercing of possible witnesses for the defense by threats of unjust prosecution and violence. This is not the case here. There is no evidence here of suppression of the testimony of Cutler by threats of any kind. In the Curran case, a police officer took the stand and testified that all the statements the police had taken from defendant after his arrest were introduced into evidence, when he knew that other statements had been destroyed. It was clear on the facts there that his motive in giving this perjured testimony was to insure a conviction. No such motive can be imputed to the F.B.I. Agents in this case. None of the agents of the F.B.I. in Baltimore knew that Cutler had been arrested in September of 1959 and sent to the Ohio penitentiary, since the Washington office did not pass this information along. The Baltimore agents were not consciously withholding information of Cutler's whereabouts. It cannot be said that the agents in Washington failed to pass this information along to Baltimore because of any motive to secure defendant's conviction. Counsel for neither side had indicated any desire to question Cutler. In the absence of any request by defendant for Cutler's testimony the Washington office could not be expected to know that his testimony would be of use in defendant's defense. All they knew was that Cutler's fingerprints were found on Couch's car and on license plates in that car. Cutler explained this in a reasonable manner by saying that he had ridden in the car some days before the robbery took place.

As to the evidence of the participation of Cutler in the crime; since participation by Cutler in the preparations for the crime was perfectly consistent with participation in the actual robbery by defendant, as demonstrated above, the fact of Cutler's implication was not relevant to the question of defendant's guilt. Therefore, even if it was withheld by the F.B.I. agents, a proposition that we cannot accept, this did not harm defendant in preparing his defense.

Therefore, the judgment of the Court denying the motion for new trial is affirmed.

### III.

We now come to the defendant's appeal from the Court's order denying the motion to vacate or correct the sentence theretofore imposed by the Court. It is obvious from a careful reading both of the original judgment and the opinion and order denying the defendant's motion under Fed.R.Crim.P. 35 that the defendant was sentenced under one count only and that was the first count of the indictment. This count charged the defendant with taking by intimidation of property belonging to a bank in violation of 18 U.S.C.A. § 2113(a). The sentence imposed was twenty years; it does not exceed the provisions of the statute. There was no other sentence imposed concurrent or otherwise.

 The motion in the appeal is filed under Fed.R.Crim.P. 35. The motion asks for correction of illegal sentence and also for a new trial. It is clear that defendant is not entitled to a new trial in a proceeding under Rule 35, since that Rule presupposes a valid conviction. Fooshee v. United States, 203 F.2d 247 (5 Cir. 1953); Cook v. United States, 171 F.2d 567 (1 Cir. 1958) Cert. denied 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088

(1949); See United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). This proceeding cannot be treated as arising under 28 U.S.C.A. § 2255 because defendant is not now serving under the sentence he seeks to attack. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959). A person who has not yet begun to serve time on the sentence attacked cannot obtain relief under Sec. 2255. Daniel v. United States, 107 U.S.App.D.C. 110, 274 F.2d 768 (D.C.Cir. 1960).

The trial Judge was aware that the defendant, having been convicted of the aggravated form of the offense under the fourth count of the indictment, could have been sentenced to twenty-five years but the Court was satisfied to impose a lesser sentence.

■ It is also apparent from the record that the defendant was not being sentenced for more than one crime and that was the crime of which he was convicted by the jury under count one of the indictment. This is not a general or aggregate sentence as the term is sometimes used. Thus, we are not faced with the problem involved in Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), where consecutive sentences were imposed under counts similar to counts one and two of this indictment. Nor are we concerned with the problems involved in Heflin v. United States, supra, or Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), where defendants were convicted and sentenced on inconsistent counts.

We find no error in respect to the sentence imposed by the Court. Nor do we feel that the Court committed any error in submitting all four counts to the jury with instructions that the defendant could be found guilty on all four or any one of the four. We have carefully read the innumerable cases wherein defendants convicted on multiple counts under Sec. 2113 have sought reversal for various reasons. We have found no cases supporting defendant's contention that it was improper for the trial court to submit the issues which were here submitted to the jury under the instructions as here given.

■ The cases cited by the defendant do not support his position. Milanovich v. United States, supra, is not relevant. Defendant attempts to argue that the reasoning applied in Milanovich to a conviction upon two inconsistent offenses: larceny and receiving, applies with equal force to the circumstances in the present case. We must disagree. The separate counts of which defendant was here convicted are not inconsistent. They are, instead, related offenses which may or may not, depending on the factual situation, be included in the more aggravated form of bank robbery herein involved, to-wit: the placing of human life in jeopardy while robbing a bank. In Prince v. United States, supra, the Supreme Court so construed the statute and reached the conclusion that Congress did not intend to pyramid the penalty for bank robbery by permitting a person found guilty of the more aggravated form to be sentenced cumulatively for each of the related offenses. This does not imply that it would be improper for a jury to find a defendant guilty of all these related offenses; indeed proper caution would require submission of all the counts to a jury where the evidence justified.

■ Nor should the several counts have been put to the jury in the alternative because they are not separate ways of describing the same offense. See Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 656, 5 L.Ed.2d 670 (1961), where the Court in speaking of counts 1 and 4 said: "This is not a case where sentence was passed on two counts stating alternative means of committing one offense; rather, the third count [fourth in this case] involved additional characteristics which made the offense an aggravated one—namely, putting persons in jeopardy of life by use of a dangerous weapon".

The defendant having been convicted under all four counts, it was proper for the Court to choose to impose a sentence under any one of the counts provided it

did not exceed the maximum penalty set forth in the statute for that offense. The fact that the Court chose to sentence under count 1 for which the maximum penalty is twenty years instead of count 4 is hardly a matter of which the defendant should complain.

The order of the District Court denying the motion is affirmed.