UNITED STATES of America ex rel.
Thomas MEERS, Relator-Appellee,

v.

Walter H. WILKINS, Warden of Attica
State Prison, Attica, New York,
Appellant.

No. 89, Docket 28173.

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1963.

Decided Jan. 6, 1964.

Gerald Zuckerman, New York City
(Anthony F. Marra, New York City, on
the brief), for relator-appellee.

Lester Esterman, Asst. Atty. Gen.
(Louis J. Lefkowitz, Atty. Gen., of the
State of New York, on the brief) (Pax-
ton Blair, Sol. Gen., of counsel), for
appellant.

Before WATERMAN, HAYS and
MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Relator was convicted of robbery in the
first degree after a trial in the Erie
County Court in February 1937, and was
sentenced to a term of 40 to 75 years on
February 23, 1937 after admitting prior
felonies. His petition alleges that his
federally-protected right to a fair trial
was violated by the prosecution's sup-
pression of evidence material to his de-
fense. This claim rests on the affidavits
of two witnesses to the crime, Cecilia
Colosanti and Christopher Colosanti, her
husband. Cecilia Colosanti's affidavit
states that she was employed in the store
where the robbery occurred and was pres-
ent at the time it occurred, the night of
October 31, 1936; that she observed a

man enter the store holding a revolver, that he ordered her to move to the rear of the store, which she did, and that she observed the same man several times thereafter while the robbery was in progress. Christopher Colosanti's affidavit states that he was waiting for his wife in a parked car outside the store, shortly before 10 P.M. on the night of the robbery, noticed that it was dark inside, and observed three men leaving it, one of whom was carrying a bag or suit case. Both affiants state that they were called to police headquarters in December 1936, and were asked to look at a man who they later learned was Thomas Meers, relator herein, that they were asked whether they had seen him on the night of the robbery, and that they positively stated to the police that they had not seen him on that night. They continue that they were not asked to testify before the grand jury or at the trial, and had no further contact with the police or the district attorney's office. At petitioner's trial, the prosecution introduced the testimony of Ferdinand Zeiger, manager of the store and of one other witness, both of whom positively identified Meers as a participant in the crime, while Meers introduced testimony tending to establish an alibi.

■ After his conviction, Meers moved for a new trial and offered the affidavits of the Colosantis in support of his motion. He also submitted an affidavit of the attorney assigned to represent him, who stated that he had not learned of the Colosantis' existence until after the trial was concluded. After denial of the motion, Meers appealed to the Appellate Division, which affirmed the denial of the new trial and the judgment of conviction. People v. Meers, 255 App. Div. 941, 8 N.Y.S.2d 708 (4th Dep't 1938). Relator then sought relief by way of *coram nobis* in the state courts in August 1961, pressing the claim on which he relies here. His application for the

writ was denied without a hearing, the denial was affirmed by the Appellate Division, and leave to appeal to the Court of Appeals was denied by a judge of that court. He then moved for habeas corpus relief in the federal courts. Judge Burke's memorandum order and opinion, entered after hearing, finds that relator had exhausted his state remedies,[1] and that the

"prosecution knew at the time of the trial that both these witnesses had the opportunity to see and observe circumstances which would have been material to the petitioner's defense, and that their testimony would have aided the petitioner in his defense. That with such knowledge they failed to disclose it to either the court or to the petitioner or his counsel, that because of this failure to disclose important testimony which would have been beneficial to the petitioner in his defense, the rights of petitioner were prejudiced and an element of unfairness existed, which amounted to a deprivation of the petitioner's right under the Federal Constitution to a fair hearing."

We are in accord with Judge Burke's view of this case and affirm his order sustaining the writ.

■ The law has been established since Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), that the conduct of state prosecuting officers may be grounds for finding a defendant's right to a fair trial violated and to authorize the federal courts to grant writs of habeas corpus. That case stands for the proposition that a conviction obtained through the use of knowingly false and perjured testimony cannot be permitted to stand. See also Pyle v. Kansas, 317 U.S. 214, 63 S.Ct. 177, 87 L.Ed. 214 (1942) and White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945). Decisions since Mooney have extended

---

1. Petitioner did not apply for a writ of certiorari in the Supreme Court to review any of the state proceedings. This cannot be considered a failure to exhaust state remedies. Fay v. Noia, 372 U.S. 391, 435–38, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

the rule to cover the case where, although the false testimony is not solicited by the prosecution, no effort is made to correct it after discovery of its falsity. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Curran v. Delaware, 259 F.2d 707 (3 Cir. 1958), cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959). Recently, and most relevantly, the Supreme Court held that, even though there was no falsehood in the testimony offered at a trial, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In Brady, petitioner had been convicted of first degree murder along with a companion, Boblit, in separate trials. Brady moved in the Maryland state courts for post-conviction relief, alleging *inter alia,* that the prosecution failed to furnish him with a confession made by Boblit in which he had admitted firing the fatal shot, although copies of other confessions which pointed to Brady as the actual slayer were provided his counsel. Brady claimed that introduction of the withheld statement might have induced the jury to pronounce a sentence of life imprisonment rather than death, which was in fact its judgment. The Court of Appeals of Maryland held that the failure to turn the particular confession over to his attorneys, was "a violation of due process," despite the fact that the prosecution apparently acted in an honest, though mistaken belief that the unsigned confession would not have been admissible at the trial for any purpose. It granted a new trial limited to the issue of punishment. 226 Md. 422, 174 A.2d 167 (1962). The Supreme Court's opinion, as noted above, specifically upheld the decision regarding the right to disclosure of the confession as a question of federal law, over the objection of Justices White, Harlan and Black that this question was not properly before it.

The case before us differs from Brady in that the defense counsel here never requested the disclosure of evidence from the prosecution, but we think that such request is not a *sine qua non* to establish a duty on the prosecution's part. It is important that the Supreme Court's opinion in Brady agreed with the Maryland Court that the decisions in U. S. ex rel. Almeida v. Baldi, 195 F.2d 815 (3 Cir. 1952) cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1952), and U. S. ex rel. Thompson v. Dye, 221 F.2d 763 (3 Cir.), cert. denied *sub nomine* Pennsylvania v. United States ex rel. Thompson, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955), state the correct constitutional rule regarding the obligation of a prosecutor to disclose exculpatory evidence. In the Almeida case, as in Brady, an important issue for the jury in determining punishment for first degree murder was whether the defendant fired the fatal shot. It was proved that a .38 caliber bullet was found near the body of the slain man and a .45 caliber bullet within the store which was the scene of the crime. Neither of these bullets was introduced in evidence by the prosecution, although it was well aware of their existence and the fact of their existence was not communicated to defense counsel. Disclosure of the bullets would have strengthened Almeida's claim that he did not fire the shots, since he was armed with a .45 and the police were armed with .38's. The prosecution apparently instructed police witnesses not to mention the .38 caliber bullet and did not respond to defense counsel's inquiry whether there were any other bullets than those which were introduced. The court affirmed the grant of the writ of habeas corpus, holding that "the suppression of evidence favorable to Almeida was a denial of due process." In the Thompson case, also a murder prosecution, an issue on the trial was whether defendant was intoxicated at the time of the killing. An arresting officer, who took him into custody three hours after the shooting, testified to the effect that he appeared "perfectly normal in every respect." An-

138

other officer, however, informed the prosecutor that at the time of the arrest defendant appeared drunk. He was not called to testify, although he was present in the courtroom during most of the trial, nor was his statement made known to the defense. Instead, the prosecutor stated in court that he could call other officers to testify that defendant was not intoxicated. The Court of Appeals reversed the district court's determination on a habeas corpus hearing that there was no suppression of material evidence, finding that the testimony of the second officer would have been of substantial value to the defense. In a concurring opinion, Judge Hastie expressed the view that whether or not the prosecutor in a criminal case must disclose evidence in his possession favorable to the accused depends on many factors, and a case-by-case judgment must be made. "It seems likely that many situations will arise in which a prosecutor can fairly keep to himself his knowledge of available testimony which he views as mistaken or false. But there are other circumstances in which a prosecutor must, or certainly should know that even testimony which he honestly disbelieves is of a type or from a source which in all probability would make it very persuasive to a fair minded jury." 221 F.2d at 769. He found important the fact that the withheld testimony in Thompson was that of a police officer noting that the error of not disclosing it "was compounded by a misleading affirmative statement as to the nature of the available but unused testimony."

We agree with Judge Hastie's brief analysis of the problem confronting a court asked to pass on a claim that the non-disclosure of important evidence deprived a criminal trial of the fundamental fairness to which an accused is entitled under the Fourteenth Amendment, and believe the instant case to involve those special circumstances which make a petitioner's claim meritorious. Here, the only important question on the trial was whether Meers was in fact one of the men who robbed the store, and the

only evidence connecting him with the crime was the testimony of two eyewitnesses. Two other disinterested eyewitnesses, one of whom was in virtually the same situation at the time of the crime as the two who were called, and one of whom apparently had a reasonably good opportunity to observe the participants as they left the scene, would have testified that Meers was not a participant. According due weight to the state court decisions to the contrary, it is hard for us to think of any other testimony that might have been more helpful to the defense in establishing its case. Since the state did not dispute on oral argument of this case the judge's finding that the identity of the Colosantis and the character of the testimony they would have given was known to the prosecution at the time of the trial, we think a duty existed to make their existence known to the defense.

Our conclusion is bolstered by many other cases, arising in both federal and state courts, which have recognized a duty to disclose material exculpatory evidence as an ingredient of due process. Although the Supreme Court did not squarely hold this proposition before Brady, we note that in Pyle v. Kansas, 317 U.S. 213, 214, 63 S.Ct. 177, 178, 87 L.Ed. 214 (1942), it ordered a habeas corpus hearing granted on allegations that state prosecuting authorities "obtained his conviction by the presentation of testimony known to be perjured, and by the suppression of testimony favorable to him." The petition did allege, however, that the testimony of favorable witnesses was repressed under intimidation and threats by the state authorities. Again, in Wilde v. Wyoming, 362 U.S. 607, 80 S.Ct. 900, 4 L.Ed.2d 985 (1960), the court ordered a hearing on a habeas corpus petition alleging lack of counsel at a guilty plea and "that the prosecutor wilfully suppressed the testimony of two eyewitnesses to the alleged crime which would have exonerated the petitioner." As early as 1941, the court in Curtis v. Rives, 75 U.S.App. D.C. 66, 123 F.2d 936, stated that "What

the appellant really charges is not denial of the right of confrontation as such, but suppression or concealment of evidence or witnesses favorable to him. We may assume that this would be a violation of the due process clause of the Fifth Amendment." Without exception, other circuits to consider this question have recognized that cases may arise in which non-disclosure may be grounds for collateral attack on criminal convictions. See Turner v. Ward, 321 F.2d 918, 920 (10 Cir.1963); Powell v. Wiman, 287 F.2d 275 (5 Cir. 1961), on appeal from remand, 293 F.2d 605 (1961); United States v. Lawrenson, 298 F.2d 880, 888 (4 Cir.), cert. denied, 370 U.S. 947, 82 S.Ct. 1594, 8 L.Ed.2d 812 (1962); Palakiko v. Harper, 209 F.2d 75, 94 (9 Cir. 1953), cert. denied, 347 U.S. 956, 74 S.Ct. 683, 98 L.Ed. 1101 (1954); Woollomes v. Heinze, 198 F.2d 577 (9 Cir. 1952), cert. denied 344 U.S. 929, 73 S.Ct. 499, 97 L.Ed. 715 (1953). See also our decision in United States ex rel. Kling v. LaVallee, 306 F.2d 199 (2 Cir. 1962). The state relies on the Woollomes case, supra, and on Application of Landeros, 154 F.Supp. 183 (D.N.J.1957), for the proposition that suppression of evidence constitutes proper ground for release only "where there has been connivance or actual fraud by the prosecution preventing use of evidence by the accused at his trial." However, the court in Woollomes indicates that the affidavits provided by alleged witnesses to the crime do not state that "knowledge possessed by the affiant favorable to the accused was made known to the proper officials prior to the trial," and concludes that they disclose at most newly discovered evidence. Whether the court would have found such deliberate and wilful suppression if the affiants had informed the police of their knowledge is of course open to question. In any event, we rest our decision on the ground that a duty to disclose the exist-

ence of the Colosantis existed, in the circumstances of this case. Formulation of the duty in terms of wilful or wrongful conduct would seem only to confuse here, and is not necessary under the governing law as we understand it.[2]

Significant support for our decision exists also in three cases in which federal district courts have sustained writs of habeas corpus largely on grounds of non-disclosure of material evidence. United States ex rel. Montgomery v. Ragen, 86 F.Supp. 382 (N.D.Ill.1949); Smallwood v. Warden, Maryland Penitentiary, 205 F.Supp. 325 (D.Md.1962); Application of Kapatos, 208 F.Supp. 883 (S.D.N.Y.1962). The last case is particularly noteworthy, since, like this one, it did not include any elements of proved bad faith or overreaching on the prosecution's part. The withheld testimony was that of a man who heard shots being fired on the street below, looked out, and saw two men jump into a car proceeding along the street without lights. This testimony would have tended to support defendant's story that he was not responsible for the killing. The witness, one Danise, was called to testify before the Grand Jury, but the prosecutor did not inform either the court or the counsel of his testimony because he lacked confidence in his credibility. Judge Palmieri's thoughtful opinion concluded that:

> "The purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one. The average accused usually does not have the manpower or resources available to the state in its investigation of the crime. Nor does he have access to all of the evidence, much of which has usually been removed or obliterated by the time he learns that he is to be tried for the crime. In view of this disparity between the investigating powers of the state and the defendant, I do not think it imposes

2. Since the state offered no explanation for the failure to disclose the evidence, we need not consider whether the with- holding of material evidence may be excused. Cf. Kyle v. United States, 297 F.2d 507 (2 Cir. 1961).

too onerous a burden on the state to require it to disclose the existence of a witness of the significance of Danise in the instant case. At the very least, the trial judge should have been made aware of this evidence, and a ruling should have been requested by the prosecutor with respect to his duty in the premises. His unilateral decision to keep the evidence undisclosed invited the risk of error." 208 F. Supp. at 888 (1962).

Finally, we note People v. Fisher, 23 Misc.2d 391, 192 N.Y.S.2d 741, (General Sessions, New York County, 1958), where the court held that "the suppression or withholding of *material evidence* by the prosecution which is favorable to a person accused of crime is a violation of due process of law and renders a conviction void," and Fugate v. State, 169 Neb. 434, 99 N.W.2d 874 (1959), cert. denied, 363 U.S. 851, 80 S.Ct. 1631, 4 L.Ed.2d 1733 (1960), which states the same rule. See generally Note, The Duty of the Prosecutor to Disclose Exculpatory Evidence, 60 Colum.L.Rev. 858 (1960).

Other points raised by the state require little discussion. We have already disposed of the argument that a showing of conscious bad faith or overreaching is required to sustain allegations that evidence was suppressed. A further argument is that the Colosantis' affidavits are an inadequate foundation for the court's conclusions. However, the state court record alone may be sufficient to sustain the writ of habeas corpus, even without a full hearing in the district court. See, e. g., United States ex rel. Wade v. Jackson, 256 F.2d 7 (2d Cir. 1958); United States ex rel. Corbo v. LaVallee, 270 F.2d 513 (2d Cir. 1959). Here, the record is sufficient to sustain the elements of petitioner's federal claim, rendering further testimony unnecessary. Finally, the state argues that there was no suppression since Meers' counsel might have learned of the Colosantis in advance of the trial, just as he in fact learned of them shortly thereafter. We agree that the availability of witnesses to the defense through its own investigations is a relevant consideration, but we do not think it is ordinarily determinative. See Application of Kapatos, supra. This is particularly true in the circumstances of this case, where the affidavit of defense counsel indicates that Meers made efforts to secure other representation between the time he was assigned and the time of the trial, and did not finally agree to use his services until about a week before the case came on for trial. Although the court below made no findings on this question, we do not think the question is of such importance in this case as to require a remand for that purpose.

Petitioner's defense was an alibi. The prosecution relied on positive identification by two eyewitnesses. The prosecution knew of two other eyewitnesses who had made positive statements to the effect that petitioner was not the person involved in the crime. There can be no question that their testimony would have been material. We cannot speculate as to the effect this testimony would have had on the jury if it had an opportunity to hear it. The jury was denied that opportunity by virtue of the prosecution's failure to acquaint defense counsel and the trial judge with the names of the witnesses. In the circumstances of this case, that denial was inconsistent with proper standards of fairness, and constituted the judgment of conviction a denial of due process of law. Therefore, the order appealed from is affirmed.

WATERMAN, Circuit Judge (concurring):

I concur in the opinion of Judge MARSHALL and also in the opinion of Judge HAYS.

I think it important in the disposition of this appeal that assigned counsel was uncertain that he was to have trial responsibilities until shortly before the case came on for trial. Although I

am of the belief that the trial judge could well have made findings that that was the situation, I agree with Judge MARSHALL that the facts of the case speak for themselves and we can affirm the order below without remanding for further findings.

HAYS, Circuit Judge (concurring):

The area in which this case lies is a delicate and difficult area and one in which we should be careful not to exceed the limits established by the Supreme Court. We would do well to take heed of Mr. Justice White's warning in Brady v. Maryland, 373 U.S. 83, 92, 83 S.Ct. 1194, 1199, 10 L.Ed.2d 215 (1963) (concurring opinion):

> "I * * * would not cast in constitutional form a broad rule of criminal discovery. Instead, I would leave this task, at least for now, to the rule-making or legislative process after full consideration by legislators, bench, and bar."

However, there are aspects of the present case which seem to me to bring it within the scope of the rules which have been laid down.

The prosecution must have been aware of defendant's difficulty in securing counsel and of the fact that assigned counsel had only a week in which to prepare the defense. The prosecutor must have known that defense counsel was unaware of the existence of the two eyewitnesses whose testimony would have been so vital to the defense. In these circumstances failure to reveal the existence of this evidence can be considered the equivalent of suppression.

In the light of the directly conflicting statements of the Colosantis, the prosecutor had the strongest reasons for questioning the reliability of the two eyewitnesses whom he called upon to testify at the trial. While he could not, of course, know for certain that their testimony was false or mistaken, he did know of the existence of contradictory evidence which cast grave doubt on the validity of the evidence he chose to present. Instead of allowing himself to be put in the position of concealing his doubts, he should, in fairness, have revealed them, at least to the extent of informing the court of the conflict.

Thus by suppressing evidence which he had reason to know was not available to the defendant, and by presenting evidence about which he must have had the gravest doubts, the prosecutor denied to this defendant that fairness which is a requirement of due process.