**John Robert LEE, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21469.**

United States Court of Appeals
Ninth Circuit.

Jan. 26, 1968.

A. Kendall Wood (argued), Michael E. Witte, of Hinchy, Katz, Witte & Wood, San Diego, Cal., for appellant.

Shelby Gott (argued), Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., Phillip W. Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before MERRILL and ELY, Circuit Judges, and STEPHENS, District Judge.

MERRILL, Circuit Judge.

Appellant was convicted of bank robbery and has taken this appeal from judgment. The sole question presented is whether the District Court erred in denying motion for new trial sought by appellant upon the ground that the Government deliberately concealed evidence which might clearly have operated in his favor.

If there had been such concealment appellant's right to due process had been violated and he was entitled to new trial. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965).

Upon trial the principal issue was that of identity. Appellant was identified as the robber by two eyewitness bank employees.

On motion for new trial appellant recited that prior to trial the trial judge had ordered Government counsel to disclose to appellant at the close of the Government's case the identity of any witness favorable to his case and to produce such person at his request. Appellant showed by affidavit of his counsel that following submission of the case to the jury Government counsel had advised appellant's counsel that at about the time of the robbery a witness had observed a person vaulting a high fence behind the bank. The affidavit stated

further, "Said Assistant United States Attorney declined to further identify the witness." Thus there was both a general pretrial request for favorable evidence in the hands of the Government and a specific request for the identity of this witness when his existence became known. We therefore need not consider what the duty of the prosecutor might have been in the absence of such a request. See Giles v. State of Maryland, 386 U.S. 66, 102, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring); United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964).

The Government did not dispute appellant's allegations. In opposition to the motion for new trial it represented simply that the evidence was not favorable to the defendant and that for this reason it was under no duty to reveal the identity of the witness. In sole support of this position it stated, "In fact, the observer was a ten-year-old boy, (now eleven) who stated that he 'was not positive whether he ran down the alley, up the alley, or jumped over the fence.' " [1]

■ Upon a motion for new trial based upon nondisclosure of evidence (as distinguished from one based on newly discovered evidence) the precise issue is what the Government had learned from the witness in question (and whether this should have led it to disclose his identity) rather than what this witness might now state under examination by the defendant.

In the typical case of nondisclosure the nature of the suppressed evidence is known to the defendant and is presented by him upon his motion. It is here argued that such a showing is necessary if the defendant's burden of establishing

lack of due process is to be met and that such a showing was not made here.

■ To require a showing in every case of just what it was that the Government learned from a witness casts too heavy a burden on a defendant. In our judgment, where identity is at issue and the defendant has shown that the Government has failed to disclose the existence of an eyewitness to the crime itself, or to entry upon or flight from the scene of the crime, and persists in refusal to name the witness, the defendant's initial burden of showing the nature of the suppressed testimony has been met by inference. It is then incumbent upon the Government to rebut the prima facie case of the defendant by disclosing the nature of the potential testimony as communicated to it at the time of trial.[2]

We leave to the District Court the question of what should constitute a sufficient governmental showing in this respect—whether the witness need be produced to test the accuracy of the Government's representations as to what it had learned from him,[3] and, if so, whether his examination should be in open court or by the court in camera.

Under the circumstances it is our judgment that the order denying motion for new trial should be set aside and that further hearing on the motion should be held.

It is so ordered.

STEPHENS, District Judge (concurring in part).

I agree with the majority that the order denying motion for new trial should be set aside and that a further hearing

---

1. We do not have before us a transcript of the hearing on motion for new trial. Appellant designated the transcript of that proceeding as part of his record on appeal. Apparently he has been unable, after diligent effort, to secure that transcript. Either it was unreported or the reporter's notes have been lost.

2. Here the only showing by the Government which appears in the record relates

not to the witness's ability to identify the person observed, but rather to his ability to specify the course of that person's flight from the scene.

3. The value of disclosure and production may in some cases be outweighed by legitimate interests of the prosecution, such as protection of the witness from intimidation by the defendant or preservation of undercover anonymity.

on the motion should be held. However, I do not agree that the hearing should be limited to inquiring what the government had learned from the anonymous boy witness.

The defendant moved for a new trial on the ground that the government suppressed evidence favorable to the accused. A hearing was held on the motion and it was denied for the reason that the evidence known to the government was not favorable to the accused. Obviously the majority believes, as I do, that the government has not been candid with the court and suspicion hangs heavy in the air.

The trial commenced on January 12, 1965. On January 14, 1965, the government filed a partial statement of evidence favorable to the defendant. Later on the same day, the government represented to the court that the partial statement was a complete statement. On January 15, 1965, after the case was submitted to the jury and while the jury was deliberating, counsel for the government told defense counsel of the existence of a witness who had observed a person vaulting a high fence behind the bank at about the time of the robbery, that this witness furnished the government with a statement and then government counsel refused to identify the witness. The government has ever since steadfastly refused to disclose the identity of the witness and has refused to give a copy of the witness' statement to the defendant.

There appears to be no doubt but that the information concerning the unnamed witness was communicated to defense counsel in the context of the court's order to disclose the identity of all witnesses who might furnish evidence favorable to the accused. If the witness was not in fact known to be favorable to the defendant, the Assistant United States Attorney should have said nothing at all. But now it appears that the government knows something which it is suppressing and the inference is strong that it is favorable to the defense or it would be willingly disclosed.

No excuse at all is offered for maintaining the anonymity of the witness. The observation is made that he was only nine years old at the time, but this is not offered as a reason and besides many children of even tenderer years are called upon to testify in both civil and criminal cases with regularity. The only justification offered by the government for suppression of information inferentially favorable to the accused, including the identity of the witness, is simply that it is not in fact favorable. All that the government will say on the subject is that the boy "was not positive whether he (presumably the bank robber) ran down the alley, up the alley, or jumped over the fence." To me this appears to be a flippant, if not insolent, disposition of the subject.

Initially the law relies upon the government to weigh the information available to it and in good faith determine whether information possessed by the government is favorable to the defendant. But obviously after the conduct of the government has raised an inference that it is suppressing evidence favorable to the accused, it is no longer up to the government to make the decision as to whether what it knows is or is not favorable.

At the hearing on the motion for new trial in the trial court, the government made a disclosure as to what the government knew concerning the potential testimony of the witness. The trial judge was of the opinion that what was disclosed was not sufficiently favorable to affect the outcome of the trial. But the government's lack of candor has been such that the completeness of the disclosure is suspect, as witness the suggestion in the majority opinion that the trial judge might in his discretion require the witness to be produced "to test the accuracy of the government's representations as to what it had learned from him."

I am disturbed by the potentialities for injustice in the phrase, "the precise issue is what the government had learned from the witness in question." For ex-

ample, the government might cease interrogation of a witness to deliberately avoid knowledge of evidence favorable to the accused. The witness would back up the government's claim that he didn't relate anything favorable to the accused.[1] Or perhaps the government might receive a telephone call from a witness to the robbery who says that he has information which will clear the man on trial. The government doesn't know what the favorable evidence would be, but it knows that the witness would favor the accused. In such situations, it is my opinion that a refusal to name the witness is suppression of evidence favorable to the accused.[2]

1. See Application of Kapatos, D.C., 208 F.Supp. 883 (1962). In this case, Danise, a witness to important sequences of the commission of a murder was known to the prosecution but not called to testify. The prosecuting attorney had a transcript of this witness' testimony before the Grand Jury, but did not call him as a witness at the trial since he did not consider his testimony probative because he had no confidence in his credibility. When finally called to testify in the federal court in the habeas corpus proceeding, the following facts came out (see footnote, page 886): Danise saw the petitioner, who had been convicted of the murder, walk up the street after the shooting and after the witness observed two other persons escaping under extremely suspicious circumstances and disappear from view. He did not tell the Assistant District Attorney who investigated the case because the Assistant District Attorney did not ask him. He tried to tell the Grand Jury about it but was cut off in the middle. He started to tell the police officer who had taken him to the courtroom to see if he could identify the accused, but the police officer would not listen. The federal court granted the writ of habeas corpus and conditionally ordered the petitioner discharged, commenting in the opinion at page 887:

"It has been an established principle of our jurisprudence, at least since the Supreme Court decision in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), that a state's conduct of a prosecution may be so contrary to fundamental concepts of justice as to constitute a denial of due process, correctible by a writ of habeas corpus."

And at page 888:

"The purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one. The average accused usually does not have the manpower or resources available to the state in its investigation of the crime. Nor does he have access to all of the evidence, much of which has usually been removed or obliterated by the time he learns that he is to be tried for the crime. In view of this disparity between the investigating powers of the state and the defendant, I do not think it imposes too onerous a burden on the state to require it to disclose the existence of a witness of the signficance of Danise in the instant case. At the very least, the trial judge should have been made aware of this evidence, and a ruling should have been requested by the prosecutor with respect to his duty in the premises. His unilateral decision to keep the evidence undisclosed invited the risk of error."

2. See United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135 (1964), citing with approval the *Kapatos* case and quoting what appears in footnote 1 from page 888 of that opinion. The opinion concluded with the following paragraph:

"Petitioner's defense was an alibi. The prosecution relied on positive identification by two eyewitnesses. The prosecution knew of two other eyewitnesses who had made positive statements to the effect that petitioner was not the person involved in the crime. There can be no question that their testimony would have been material. We cannot speculate as to the effect this testimony would have had on the jury if it had an opportunity to hear it. The jury was denied that opportunity by virtue of the prosecution's failure to acquaint defense counsel and the trial judge with the names of the witnesses. In the circumstances of this case, that denial was inconsistent with proper standards of fairness, and constituted the judgment of conviction a denial of due process of law. Therefore, the order appeal from is affirmed."

In Curtis v. Rives, 75 U.S.App.D.C. 66, 123 F.2d 936, 938, referring to appellant's charge that the prosecution had concealed "evidence or witnesses" favorable to the accused, it was stated, "We may assume that this would be a violation of the due process clause of the Fifth Amendment."

On motion for a new trial on the ground that the defendant has been denied due process because the government suppressed evidence favorable to the accused, it must be determined whether the evidence would be favorable enough to make it likely that a new trial would produce a different result. To make this determination in a case where the witness is known to have undisclosed knowledge which is thought to be favorable to the accused, the testimony of the witness must be taken.

The majority says that the government's persistence in refusing to name the eyewitness raises an inference which meets "the defendant's initial burden of showing the nature of the suppressed testimony." An inference must be drawn from fact. The fact from which this inference is drawn is the suspicious conduct of the government. But the nature of the suppressed testimony is not at all actually supplied by inference except that it is inferred that such testimony will probably favor the accused. Ordinarily the substance of the suppressed evidence is supplied to the court by the defendant. This is the step the inference dispenses with. The next step is to examine what has been supplied by the defendant and to determine whether it is sufficiently favorable to the accused to affect the outcome of a trial. But here the inference furnishes nothing to be examined until the testimony is obtained.

The suppression of the identity of the witness is the suppression of his testimony, whatever it might be. Viewed in this light, the conduct of the government has given rise to an inference that evidence in the form of testimony favorable to the defense is being suppressed and this should relieve defendant of the initial burden which he ordinarily bears. At this point, the government should be called upon to produce the testimony, not just what part of it was actually known to the government, but the whole of it by producing the witness himself because all of it has been suppressed. Then after the testimony is taken, it can be examined to determine whether it would have likely affected the outcome of the trial.

I am mindful that not infrequently there are very good and sufficient reasons for not disclosing the identity of a witness. The suggestion that the trial judge should decide whether to hold such a hearing in camera or in open court in all probability will overcome objections to disclosure. But in the final analysis, if a reason is advanced against disclosure of the identity of the witness or production of the witness, the trial judge must pass upon its sufficiency.

Barring the existence of a sufficient reason against identifying or producing the witness, I think that the boy whose identity has been suppressed should be produced and interrogated not only concerning what he told the government, but concerning everything he can remember which is relevant to this case. This is the only way that justice can be done and the appearance of justice upheld and preserved.