Albert LESSARD, Appellant,

v.

Fred R. DICKSON, Warden California State Prison, San Quentin, California, Appellee.

No. 21513.

United States Court of Appeals Ninth Circuit.

April 17, 1968.

As Amended on Denial of Rehearing June 4, 1968.

Albert Lessard, in pro. per.

Thomas C. Lynch, Atty. Gen., Edward P. O'Brien, Don Jacobson, Deputy Attys. Gen., San Francisco, Cal., for appellee.

Before JOHNSEN *, BARNES and ELY, Circuit Judges.

PER CURIAM.

Judge Johnsen and Judge Barnes are of the opinion that the District Court's denial of Lessard's habeas corpus petition is entitled to be affirmed. Judge Ely is of the opinion that the District Court's disposition was proper as to all of Lessard's asserted claims except one, on which he is expressing his dissenting view. Lessard is a California state prisoner under a life sentence for conviction of first-degree murder.

The claim on which we thus differ is one of several charges made by Lessard that the prosecution had knowingly concealed and suppressed matters of evidence favorable to him. All of the claims of suppression (and other unfair-trial claims, such as the alleged use of perjured testimony) were made the subject of an evidentiary hearing before a special master appointed by the California Supreme Court in a habeas corpus proceeding permitted to be instituted in that Court under its original jurisdiction, and of a plenary determination by the Court, on the master's record and report, of the lack of merit in each of them. See In re Lessard, 62 Cal.2d 497, 42 Cal.Rptr. 583, 399 P.2d 39. Lessard's conviction had previously been affirmed on an appeal from the judgment

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

of conviction. People v. Lessard, 58 Cal.2d 447, 25 Cal.Rptr. 78, 375 P.2d 46.

The situation as to the claim here being discussed differs from that as to Lessard's other claims of suppression in the respect that the latter were the subject of express reference to the master and the former was not, and that the master accordingly made no findings upon it as he did on the others which had been referred to him. The lack of reference was due to the fact that Lessard had not made specification or indication of the particular claim in his habeas corpus petition. The master regarded himself as only authorized to make findings upon the issues referred to him. He permitted, however, both Lessard and the State to make full testimonial development of the unreferred claim and included the evidence thereon in the record which he transmitted to the California Supreme Court. And the California Supreme Court allowed presentation and argument to be made of the claim on the master's record, the same as in the case of his other claims of suppression.

Since the California Supreme Court was dealing with the habeas corpus petition in its original jurisdiction, it constituted in the situation the trier of the facts. In relation to its performance of this function, Lessard had, as noted, been accorded a full evidentiary hearing before the master, both on the referred claims and the unreferred claim involved. Thus the question as to the propriety of the District Court's disposition of the particular claim is not a matter of lack of evidentiary hearing. Lessard does not contend before us, nor did he in the District Court, that he has any further evidence which could be offered in respect to the claim. The issue therefore simply is whether the California Supreme Court as trier of the facts made such resolution and indication, or findings, as competently to demonstrate and adequately to support its determination of lack of merit in Lessard's claim of suppression, and as fairly to entitle the District Court to make acceptance thereof.

The majority of the panel here believe that the situation was of this nature and that the District Court could properly treat it, within the language of Townsend v. Sain, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, as one in which "the state-court trier of fact has after a full hearing reliably found the relevant facts".

The murder involved had been committed in the deceased's room at a motel in San Francisco. He was stabbed to death with a knife. He had been carrying approximately $800 on his person from having cashed a check for his summer earnings as a school teacher. During the afternoon, after he had checked into the motel, he went across the street to a tavern, where he fell into drinking companionship with Lessard, a previous felon. Shorty after 6:00 p. m., Lessard absented himself for about 15 minutes, went to a restaurant-supply store located in the neighborhood, and purchased a boning knife. In making selection of the knife he desired, he left his fingerprints upon one of the other knives which he had examined. He returned to the tavern, and about 6:30 p. m. he left with the deceased and went across the street to the latter's motel.

The deceased's body was discovered in his room at 11:00 a. m. the next day. Fingerprints of Lessard were found upon an ashtray in the room, a drinking glass and the handle of a toilet bowl. A pink shirt with a distinguishing sheen or glisten, stained with blood, lay rolled up on the bed. There was testimony at the trial that Lessard was wearing such a shirt in the tavern. Also, the daughter of the proprietor of the supply-store, who was waiting in the store for her father, testified that the purchaser of the boning knife had on such a shirt.

Two years elapsed before the police succeeded in catching up with Lessard. They were able to locate and identify him, by means of his fingerprints, only because he had then become an inmate of a federal penitentiary, under a Dyer Act sentence. Lessard had made a hasty

departure from San Francisco on the night of the murder, taking a 9:30 p. m. bus for Seattle, Washington. After he had been located by the state authorities in the federal penitentiary, he denied to them that he had been in San Francisco at the time of the murder. He claimed that he had not been in the city for approximately ten years. Later he changed this period to a month before the murder, but he continued to assert that he had not been there at the time of the crime. He further insisted that he had never been in either the tavern or the motel involved. On his trial he made a switch and admitted that he had been in the deceased's motel room during the evening of the crime and that he had stolen the deceased's wallet, which he said he took from the victim's coat pocket while the latter was in the bathroom.

On his motion for a new trial, Lessard again shifted his position, claiming that he had not been in the motel room, but that when he and the deceased left the tavern they got into the deceased's automobile to drive to another bar; that they stopped on the way for the deceased to make a call; and that during the time the deceased was out of the car Lessard opened up the glove compartment, saw the deceased's wallet lying there, appropriated it, and then exited from the scene.

Lessard's attitude throughout, as his voluminous papers manifest, has been that if one set of asserted facts doesn't work, try another. Thus the master's findings on one of the claims of suppression referred to him included the following: "I find the petitioner to be unworthy of belief. He has made so many incorrect statements, inconsistent statements and downright falsehoods herein that his testimony above-referred to is wholly unreliable, and so far as it is in conflict with other evidence in the case, I find it to be untrue".

As to all of Lessard's alleged claims of suppression, the deputy prosecutor, who had handled the trial, testified generally before the master that "there was no·withholding of any evidence by the prosecuting attorney or by any other officer, to his knowledge". On the elements involved, we think the California Supreme Court could properly conclude and evaluatively hold as to the instant claim that "We do not believe * * * that the facts * * * demonstrate a suppression of evidence in denial of due process".

The Court made the following statement and appraisal in respect to whether the prosecution had knowingly or deliberately engaged in a concealment and suppression (62 Cal.2d at 511–513, 42 Cal.Rptr. at 592, 399 P.2d at 48):

"Finally, petitioner constructs an argument involving the asserted knowledge of the prosecution that a visitor at the motel inquired for the victim at 6:00 p. m. on the 16th [the date of the crime]. The argument rests upon the fact that on the day after the killing a police inspector questioned the telephone operator of the motel, Mrs. Gustavson; that she testified at the reference hearing that she told the inspector that a man in a 'grey suit with sort of pinkish specks' asked for the victim at 6:00 p. m.; that she rang the room, and that the victim said: 'I am expecting him'. She then allowed this unidentified stranger to proceed back to the victim's room. She said that she remembered the time because a guest had just inquired about the 6 p. m. telephone night rates. Mrs. Gustavson also testified that the officers brought a suspect to her for identification; that she told them that the man so presented was taller than the actual visitor; that the former was shabby looking, but the latter neatly dressed.

"The prosecution did not tell the defense about these statements. According to Mr. Michos, an attorney for the petitioner subsequent to the trial, the prosecutor, Mr. Giubbini, told him about the statements only after the trial. The prosecutor had then said that he had not further pursued the

matter because he felt Mrs. Gustavson to be unreliable and the incident unimportant.

*"We do not believe, however, that the facts of this case demonstrate a suppression of evidence in denial of due process.* Police officers interviewed Mrs. Gustavson the day after the murder, in June 1959. She told them that a man visited the decedent; yet the officers could do little with the general statements which she gave them; they testified, in any event, that they considered the testimony unreliable. Thereafter, almost two years expired before defendant's apprehension and trial. *Due process does not require that officers, two years after the discovery of information, must remember facts that have become stale with time and that they must sua sponte disclose them to the petitioner or his attorneys. We cannot find that the prosecution 'deliberately supressed' evidence which long before they had considered to be unreliable or that failure to resuscitate such forgotten statements 'was a material deception and that there was knowledge thereof on on the part of the prosecuting officer.* * * * *'* " (Emphasis added.)

The California Supreme Court credited the testimony for the prosecution, as it had a right to do in its prerogative of trier of the facts, that Mrs. Gustavson's statements had not impressed at the time as having any apparent significance or being reliable. It took into account the further fact that two years had thereafter gone by before Lessard was apprehended. In these circumstances, it refused to believe "that there was knowledge thereof on the part of the prosecuting officer" at the time of the trial; it regarded the situation as one of "facts that have become stale with time"; and it held that "failure to resuscitate such forgotten statements" could not be declared to be a suppression.

It would be both rational and realistic for the California Supreme Court to believe and find that Mrs. Gustavson's statements had ceased to be carried on the mind and recollection of the prosecutor, after the processes of the investigation had developed such an overwhelming incriminating web about Lessard—his tavern associationship with the deceased and his accompaniment of him to the motel; his intervening purchase of the boning knife; the infliction of the death by stabbing; the fingerprints of Lessard contained in the room and on the other knife in the store; the discarding at the scene of the crime of the blood-stained individualistic shirt such as Lessard had been wearing; and Lessard's hasty flight to somewhere else and his continued non-return to San Francisco. Confirmation that there had not been a concealment or suppression on the part of the prosecution in relation to the trial would seem to be added also by the fact that, after the prosecutor had apparently been asked to go over the case with new counsel for Lessard and had made review of the entire matter in his mind, he had not hesitated to mention this aspect to Lessard's counsel. It would hardly seem likely that he would have engaged in such frankness as to the matter, if on the trial there had been an attempted concealment or suppression as to it.[1]

Mrs. Gustavson's testimony, if it had been brought out on the trial, would have materiality, but it could hardly be regarded as being able to have much force against the inexorable array of incriminating circumstances with which Lessard was surrounded. It was not in the circumstances evidence of such fundamental aspect on guilt or innocence as

---

1. The situation here differs from that in Lee v. United States, 9 Cir., 388 F.2d 737, where after the prosecution had been ordered by the court to disclose the identity of any witness favorable to the defense, it chose not to tell defense counsel that "at about the time of the robbery a witness had observed a person vaulting a high fence behind the bank", until after the jury had commenced its deliberation, and where even at that time it refused to provide counsel with the name of the witness.

would make absence thereof alone present a possible question on due process as to conviction, irrespective of whether concealment and suppression had existed in relation to it. Lessard regards it of importance as enforcing his argument that he could not have committed the murder, since the coroner's original report had stated that the death had ocurred from 10 to 12 hours before the discovery of the body at 11:00 a. m. and since his departure from San Francisco on a 9:30 p. m. bus would have made it impossible for him to have been at the motel within the range of this period. But the jury had been left with no difficulty as to this argument—and would hardly been likely to have had any more on Mrs. Gustavson's testimony—on the basis of the testimony by the coroner that the formal report had been prepared by a deputy coroner, and that while it represented such judgment as had been formed at the time, it was nevertheless only an estimate and death could have occurred within a range of as much as 14 hours before the discovery of the body.

■ On Lessard's other claims the panel, as has been indicated, is in accord that the District Court did not err in the disposition which it made. Of these, the claim most strenuously argued here is that of illegal search and seizure as to a white shirt belonging to Lessard, which his wife had permitted the officers to take, and which was used on the trial to show a similarity in laundry mark with that of the pink shirt which has been referred to above.

The California Supreme Court had rejected the claim of illegal search and seizure on the ground that Lessard's trial counsel had not only failed to object to the admissibilty of the allegedly tainted evidence "but he stated that he did not object to it and, additionally, did not present the issue on appeal". 62 Cal.2d at 503, 42 Cal.Rptr. at 587, 399 P.2d at 43. Lessard has made the statement at several places in his papers that his counsel believed at the time that objection to the admission of the shirt would have opened up aspects of collateral information and implications which would have been more harmful in the trial than to permit the shirt to go in without objection. In fact, in his habeas corpus petition Lessard expressly recognized and accepted this position, stating that "petitioner respectfully submits had there been an objection it would only of [sic] compounded the prejudice petitioner was then laboring under * * *".

Characteristically, he later sought to shift from this position and seeks to argue here as a justification for no objection having been made that it would have been futile to make objection under California law, notwithstanding the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The transcript of proceedings in the state trial court, however, demonstrates that defense counsel was aware of the constitutional implications attending the prosecution's offer of the evidence and that he deliberately chose not to object. With this record before it, the District Court was entitled, in the exercise of sound discretion, to deny relief in the situation as to the claim upon the ground that there had been a deliberate bypassing of orderly state procedures under which the claim of search and seizure could have been raised. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848–849, 9 L.Ed.2d 837. See also Nelson v. People of State of California, 9 Cir., 346 F.2d 73.

Lessard's assertion of rights under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, is without merit, the trial as to his guilt having commenced prior to June 22, 1964. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. While the question of the appropriate penalty in the situation had been permitted to be made a matter of a second trial under California law, this bore no relationship to and was without any effect upon the finality of the previous conviction proceedings.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. The opinion of my Brothers, carefully considered though it is, tends to obscure certain facts which are undeniable. They are as follows:

(1) Almost immediately after the homicide was committed, the investigating officers interviewed a woman who supplied them with facts which, if given as testimony and believed, would have materially strengthened the appellant's defense.

(2) The name of the woman, as well as the material evidence which she furnished, was, for some reason, concealed by the prosecution until after the termination of a trial in which appellant was found guilty.

(3) There has never been a *factual* hearing by any court or court officer empowered to make a determination regarding the particular point with which I am now concerned.

As I see it, the majority reaches its conclusion by an indirect course, thereby avoiding a head-on confrontation with the controlling issue. That issue may be stated very simply: Is the prosecution excused from an unconstitutional concealment of material, exculpatory evidence in its possession because, and only because, the concealed evidence was acquired two years before the defendant's trial from a person whom the prosecutor and his investigating officers believed was not reliable? The California Supreme Court held, in effect, that the prosecution was excused because of the lapse of time and police distrust based, apparently, upon nothing more solid than instinct. I cannot agree with that conclusion.

Our court has very recently evidenced its respect for the rule that if the prosecution "deliberately concealed evidence which *might* clearly have operated in * * * favor" of an accused, his "right to due process [has] been violated and he [is] entitled to new trial." Lee v. United States, 388 F.2d 737, 738 (9th Cir. 1968) (emphasis added), citing Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Thomas v. United States, 343 F.2d 49 (9th Cir. 1965). In *Lee* the prosecuting attorney employed the same procedure as that adopted by the prosecutor in the case before us—that is, he withheld information from the defense until immediately after the conclusion of the trial. Our court held that a hearing was required, thereby rejecting, at least by implication, the rationale of the majority here that a defendant may be denied the benefit of favorable information in the hands of the prosecution where it may be inferred from the prosecutor's surrender of the knowledge after his triumph that the prior concealment was not improperly motivated. I respectfully submit that the prosecutor's motive is immaterial. A government enjoys an immense advantage over a private individual whom it engages as an adversary. Its financial and investigative resources are almost always incomparably superior to those of the individual. When one is accused of a crime and the government acquires evidence which might clearly operate in favor of the accused, the government is required to divulge it.

> "A criminal trial is not a game in which the State's function is to outwit and entrap its quarry. The State's pursuit is justice, not a victim. If it has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which *may* exonerate the defendant or be of material importance to the defense * * * the State is *obliged* to bring it to the attention of the court and the defense."

Giles v. State of Maryland, 386 U.S. 66, 100, 87 S.Ct. 793, 810, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring) (emphasis added). The accused should not be penalized because memory failure on the part of the prosecution continues until the time when memory's restoration would introduce no complicating elements into the trial.

The majority laboriously, as well as effectively, analyzes the testimony pre-

sented at the trial and apparently attempts to weigh it against the testimony which, presumably, would have been given by the individual whose knowledge was concealed. After weighing the assumed testimony and the credibility of this person, whom neither it nor any other court has ever seen or heard, the majority reaches the conclusion that the testimony, had it been given, *would* not have aided the accused. It therefore seems to me that the true test—whether or not the concealed evidence *might* clearly have operated in the accused's favor—is being ignored.

It is true, of course, that under Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the District Court was not required to grant an evidentiary hearing if, from review of the record of the state court proceedings, it could fairly determine that the factual issues tendered by appellant had been resolved, after full and fair hearing, in the state courts. In denying appellant's petition for habeas corpus, the district judge held that appellant had been afforded such a hearing. In this regard, the record reveals that the California Supreme Court, on petition for habeas corpus, had ordered a reference hearing to resolve issues of fact which were raised in appellant's petition. The findings of the referee, upon some of which the state court relied in denying the petition, were adverse to appellant's claims.

As to the questions actually referred to the referee, I agree with the district judge that the hearing did comport with standards required by *Townsend*. However, the California Supreme Court was presented with one significant question "[i]n addition to the * * * questions submitted to the referee * * *." In re Lessard, 62 Cal.2d 497, 510, 42 Cal.Rptr. 583, 592, 399 P.2d 39, 48 (1965). That question related to appellant's claim of concealment by the prosecution of material evidence. As noted by the majority, appellant's position was stated by the California court as follows:

"The [appellant's] argument rests upon the fact that on the day after the killing a police inspector questioned the telephone operator of the motel, Mrs. Gustavson; that she testified at the reference hearing that she told the inspector that a man in 'a grey suit with sort of pinkish specks,' asked for the victim at 6:00 p. m.; that she rang the room, and that the victim said: 'I am expecting him.' She then allowed this unidentified stranger to proceed back to the victim's room. She said that she remembered the time because a guest had just inquired about the 6 p. m. telephone night rates. Mrs. Gustavson also testified that the officers brought a suspect to her for identification; that she told them that the man so presented was taller than the actual visitor; that the former was shabby looking, but the latter neatly dressed.

"The prosecution did not tell the defense about these statements. According to Mr. Michos, an attorney for the petitioner subsequent to the trial, the prosecutor, Mr. Giubbini, told him about the statements only after the trial. The prosecutor had then said that he had not further pursued the matter because he felt Mrs. Gustavson to be unreliable and the incident unimportant."

62 Cal.2d at 511–512, 42 Cal.Rptr. at 592–593, 399 P.2d at 48–49.

In resolving this additional issue against appellant, the state court did not determine, as the majority now presumes to do, that the allegedly suppressed evidence was insufficiently material or substantial. Indeed, it does not appear to me that it might properly have done so. The body of the victim was discovered at approximately 11 o'clock in the morning of June 17, 1959. The deputy coroner originally reported his estimate that death had occurred ten to twelve hours before. In his trial testimony he modified this estimate by expressing his opinion that death 'might' have occurred as long as ten to fourteen

hours before the body was discovered. Thus, if the original estimate was accurate, the victim was killed within the two-hour period following 11 o'clock of the evening preceding the discovery of the body. If, on the other hand, the deputy coroner's altered estimate was correct, it would still follow that the victim could not have been slain earlier than 9 o'clock in the evening of June 16th. During the trial, the appellant admitted that he had been drinking with the deceased during the afternoon of June 16th and had, in fact, visited the deceased's motel room. He insisted, however, that he left the room without harming the deceased, and, as stated by the California Supreme Court, "some evidence indicated that petitioner boarded a bus to Seattle between 9:00 p. m. and 9:30 p. m. on June 16th * * *." 62 Cal.2d at 511, 42 Cal.Rptr. at 592, 399 P. 2d at 48. Had this evidence been believed by the jury, and had there been acceptance of the validity of the deputy coroner's original report as to the time of death, the appellant could not logically have been held to have committed the homicide. In these circumstances, I must conclude that evidence that "an unidentified stranger," one other than appellant, had been allowed by the motel's telephone operator to proceed to the victim's room during the crucial time period was significantly material in support of the defense which was offered. It seems to me that no judge or group of judges has such omniscience as to enable him or it, without a hearing and without having seen the witness, to reject positively the claim that the evidence *might* have operated in favor of the accused.[1]

The California court's disposition of the issue rested upon two principal considerations, and my Brothers have choosen not to analyze them. They were (1) that two years had elapsed between the time police officers interviewed the telephone operator and the time of trial and (2) that when they acquired the information, the officers and the prosecutor "felt * * * [the operator] to be unreliable and the incident unimportant." 62 Cal.2d at 612, 42 Cal.Rptr. at 593, 399 P.2d at 49. If the stated grounds furnish no support for the state court's conclusion, the validity of the conclusion itself it open to serious question. I do not argue that the prosecution was required to make a voluntary disclosure of every bit and scrap of information which it might have accumulated in the course of its investigation. On the other hand, all agree that deliberate concealment of material evidence which might clearly have operated in favor of an accused constitutes infringement of due process requirements. See Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957). See also United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964). Surely, concealment or suppression of such evidence cannot properly be justified because of the mere passage of time or because the adversaries of an accused may have formed their unilateral opinion, subjective, undisclosed, and perhaps mistaken, that the evidence is "unreliable" or "unimportant."

I would reverse.

---

1. But the majority writes: "Mrs. Gustavson's testimony * * * would have materiality, but it could hardly be regarded as being able to have much force against the inexorable array of incriminating circumstances with which Lessard was surrounded."