962 F.2d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jack William STOKES, Defendant-Appellant.
 No. 91-10148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1992.
Decided May 7, 1992.
 
 1
 Before CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges, and BURNS*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant/Appellant, Jack Stokes, appeals his conviction for bank robbery under 18 U.S.C. § 2113(a) as well as the sentence he received under the United States Sentencing Guidelines for bank robbery. 18 U.S.C. § 2113(a) (1988); U.S.S.G. § 2B3.1. Stokes argues that the district court erred by denying his motion for a new trial based on the government's alleged Brady violation. He also argues that the district court erred in sentencing him to 240 months in violation of 18 U.S.C. § 3581. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We affirm the district court's decision.
 
 BACKGROUND
 
 4
 On February 9, 1990, Jack Stokes was released from the Perryville Prison and was taken to a halfway house in Phoenix. After attending an orientation seminar, Stokes left the facility without permission. Approximately an hour later, Stokes entered the Valley National Bank at Seventh Avenue and Thomas Street. He had his jacket wrapped around his hand as if he were carrying a gun. He approached the teller on duty, Pamela Stanford, and handed her a note asking for money. The note also read "Don't make me hurt you." The teller handed over approximately $2,660.00 and then Stokes left. After the robbery, the bank called the FBI. Several FBI agents heard the radio transmission reporting the robbery and describing the suspect. On their way to the bank, the agents spotted an individual, Stokes, who fit the description of the suspect. The agents stopped Stokes and found him in possession of the stolen money. Surveillance photographs taken during the robbery confirmed that Stokes was the man who had robbed the bank.
 
 
 5
 Prior to the trial, Pamela Stanford was interviewed by the Assistant U.S. Attorney prosecuting the case. At that time she informed him that she no longer worked for the bank because she had been accused of stealing money from the bank. The prosecutor told her to answer truthfully any questions which defense counsel might ask with respect to why she no longer was employed by the bank. The prosecutor was not aware at the time that Stanford was under investigation by his office for bank embezzlement. Her testimony was not given pursuant to any plea agreement with the prosecutor.
 
 
 6
 Stokes went to trial on November 13, 1990. At trial, Stokes admitted to taking the money from the bank but claimed that he had not done so by the use of force or intimidation. Stanford testified that she had not read the threatening portion of the note and had given Stokes the money pursuant to bank rules requiring tellers to give a person asking for money whatever they ask for. The court instructed the jury on the issue of force or intimidation and the jury returned a verdict of guilty. The range for Stokes' sentence under the Sentencing Guidelines was 212-262 months. The district court sentenced Stokes to the statutory maximum of 240 months.
 
 
 7
 On November 20, 1990, Stanford was indicted by a federal grand jury on charges of bank embezzlement. Stokes brought a motion for a new trial claiming that the prosecutor had committed a Brady violation by failing to turn over to the defense the exculpatory evidence that Stanford had been fired and was under criminal investigation for bank embezzlement. The district court denied the motion and Stokes appealed.
 
 DISCUSSION
 I. BRADY VIOLATION
 
 8
 A challenge to a conviction based on a violation of Brady v. Maryland, 373 U.S. 83 (1963) must be reviewed de novo. United States v. Kennedy, 890 F.2d 1056, 1058 (9th Cir.1989), cert. denied, 494 U.S. 1008 (1990). A Brady issue is raised when the government fails to disclose potentially exculpatory evidence to the defense. Such a suppression of material evidence favorable to the defendant may violate due process. Favorable evidence includes impeachment evidence. United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988).
 
 
 9
 Stokes argues that the fact that Stanford had been fired and was under investigation was impeachment evidence which would trigger the prosecutor's responsibilities under Brady. Stokes sets out at great length in his brief the reasons why this evidence could have impeached Stanford. Furthermore, he claims that her testimony was the only testimony on the issue of threat or intimidation and thus her credibility was the key to the jury's verdict. Therefore, Stokes argues he is entitled to a new trial.
 
 
 10
 Stokes argument, however, ignores the recent Supreme Court opinion in United States v. Bagley, 473 U.S. 667 (1985). In Bagley, the Court held that the standard of materiality applies when the government fails to disclose impeachment material. Id. at 669. The Court stated that the standard for determining a motion for a new trial is whether there is a reasonable probability that, had the information been disclosed, the result of the trial would have been different. Id. at 682. Thus, for Stokes to be entitled to a new trial there must be a reasonable probability that the result of the trial would have been different if the impeachment information had been disclosed.
 
 
 11
 Stokes argues that the result would have been different had the information been disclosed because Stanford's testimony was the only evidence presented by the government on the issue of threat or intimidation. Stokes' contention is not supported by the record. The record reveals that the note clearly threatened the teller with harm if she did not comply with its demands. Additionally, the surveillance photographs admitted at trial clearly showed Stokes holding his hand in his coat as if he were holding a gun. Consequently, there is ample evidence to support the jury's finding that Stokes did use threat or intimidation to obtain the money. Whether or not Stanford actually felt intimidated is unimportant. The jury was properly instructed that "[i]ntimidation means doing something that would make an ordinary person fearful of bodily harm." (Emphasis added). See Manual of Model Jury Instructions for the Ninth Circuit, Instruction No. 8.35A (as modified) (1989). Furthermore, the record demonstrates that Stanford's testimony was not the key to the jury verdict. Stanford testified that she did not read the portion of the note which contained the threat. Thus, her testimony supported Stokes' version of the facts. Impeachment evidence against Stanford would have made little difference in the outcome of the trial. Stokes is not entitled to a new trial as there is not a reasonable probability that the evidence withheld would have changed the outcome of the trial had it been disclosed.
 
 
 12
 II. SECTION 3581(b)(3) DID NOT CHANGE MAXIMUM PENALTY
 
 
 13
 Stokes claims that 18 U.S.C. § 3581(b)(3) changed the statutory maximum penalty for unarmed bank robbery from twenty years, as set out in the provision describing the offense, to twelve years. As a result, Stokes argues that the district court erred in sentencing him to a term higher than the 144 months authorized under section 3581(b)(3).
 
 
 14
 Stokes contends that section 3581 supersedes the statutory maximum sentences provided in the various sections defining offenses, including the section defining bank robbery. Stokes points out that, under section 3559(a), bank robbery, as defined by section 2113(a) is a Class C felony. Under section 3581(b)(3), a Class C felony is punishable by no more than twelve years incarceration. Stokes argues that 3581(b)(3) changes the statutory maximum sentence for a violation of section 2113(a) from twenty years to twelve years. Thus, he concludes that the district court erred in sentencing him to a term greater than the 144 months allowed under section 3581(b)(3).
 
 
 15
 We review the legality of a sentence de novo. United States v. Ruiz, 935 F.2d 1033, 1035 (9th Cir.1991). We conclude that section 3581(b) does not supersede all statutory maximum sentences for federal offenses. Stokes' position is contradicted by the plain language of the provisions at issue, the intent of Congress expressed in the legislative history and the cases which have addressed the issue.
 
 Plain Language
 
 16
 Section 3559(b) discusses the effect of assigning a felony letter designation under section 3559(a) to offenses which did not have such a designation. It states that "[a]n offense classified under subsection (a) carries all the incidents assigned to the applicable letter designation, except that the maximum term of imprisonment is the term authorized by the law describing the offense." 18 U.S.C. § 3559(b). A plain language reading of this provision clearly reveals that assigning a felony letter designation to an offense does not have the effect of changing the statutory maximum for that offense. Section 2113(a) does not have a felony letter designation in the section defining the offense. Thus, it falls under the category of offenses which were assigned a felony letter designation under section 3559(a) and whose statutory maximums are not changed by section 3581(b).
 
 Legislative History
 
 17
 The legislative history also contradicts Stokes' claim that section 3581(b) supersedes all statutory maximum sentences. Congress made it quite clear that it did not intend to change the existing sentencing provisions when it introduced the grading scheme. The Committee specifically considered having a provision like section 3581(b) amending all offense sections, but rejected the idea.
 
 
 18
 The Committee has reexamined the desirability of amending current law in an attempt to conform sentencing provisions to the grading scheme of the bill, and has decided that a general provision such as section 3559 is preferable at this time. To amend each individual section implies that the Committee has given careful consideration to grading all existing offenses, when, in fact, this has not been the case.
 
 
 19
 S.Rep. No. 225, 98th Cong., 2d Sess. 87, reprinted in 1984 U.S. C.C.A.N. 3270. The Senate Report clearly indicates that Congress did not intend to change the existing statutory maximums even though it intended to give every offense a felony letter designation. It states:
 
 
 20
 Title II creates a grading scheme by which each offense can be ranked according to its relative seriousness. This device is used to define the maximum terms of imprisonment, the maximum fines, the maximum terms of probation and the maximum terms of supervised release for each grade of offense. The definition of maximum prison terms does not alter existing statutory maximums: the existing federal statutes still determine the maximum terms of imprisonment. The provision is intended merely to provide a useful scheme for future Congressional classification of criminal statutes. On the other hand, the proposed maximums for fines, probation and supervised releases will supersede existing law when the bill is enacted into law.
 
 
 21
 See S.Rep. No. 225, 98th Cong., 2d Sess. 50, 51, reprinted in 1984 U.S.C.C.A.N. 3182, 3234 (Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, Title II, 98 Stat.1976 (1984)) (emphasis added). This is not a case where we have to infer Congress's intent in one statute from looking at another statute. The text from the Senate Report is unambiguous: "The definition of maximum prison terms does not alter existing statutory maximums." Congress clearly knew how to make the statute supersede existing law because it did so with respect to fines, probation and supervised release. The fact that Congress did not do it for terms of imprisonment shows that Congress did not intend to change the statutory maximums.
 
 Existing Caselaw
 
 22
 The issue of whether section 3581(b) supersedes existing statutory maximums for federal offenses has been addressed recently by this circuit in United States v. Schiffbauer, No. 90-10624, slip op. at 1081 (9th Cir. Feb. 4, 1992). In Schiffbauer, this court held that section 3581(b) provides the maximum penalty only for offenses which were given a letter classification in the defining statute. Id. at 1085. It does not alter the maximum penalty for offenses which received a letter classification for the first time in section 3559(b). Id. Bank robbery as defined in section 2113(a) was given a letter classification for the first time by section 3559(b). Thus, the maximum penalty provided for Class C felonies in section 3581(b) does not apply. The maximum sentence for a violation of section 2113(a) is the 240 months provided for by that section.
 
 
 23
 Consequently, Stokes' claim that the maximum sentence which he may receive is 144 months is erroneous. Stokes' Guideline range was 212-262. The statutory maximum was 240 months. The district court sentenced Stokes to 240 months which was within the applicable Guidelines range and under the statutory maximum. Thus, the district court did not commit error in sentencing Stokes.
 
 
 24
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Hon. James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3